ERNESTO TORRES RIVERA, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., recurrida.

Número: 576    Resuelto: 12 de junio de 1962

*Ferdinand Rivera Ortega* y *José A. Rivera Bernard,* abogados del recurrente; *Ángel de Jesús Matos* y *Carmen Ana Archeval,* abogados del Administrador del Fondo del Seguro del Estado.

Sala integrada por el Juez Asociado señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados señores Santana Becerra y Rigau.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El peticionario trabajaba como Inspector de Saneamiento en el Departamento de Salud. El día 13 de abril de 1959, mientras inspeccionaba un negocio, sufrió un ataque epiléptico cayendo al suelo y sufriendo la fractura del hueso parietal y otras lesiones en su cuerpo.(¹) El Administrador del Fondo del Seguro del Estado resolvió que no se trataba de un accidente del trabajo; que la caída no se debió a un riesgo inherente de éste, y sí fue motivada por una condición orgánica susceptible de surgir en cualquier circunstancia en el curso del empleo o fuera de éste, y sin ser precipitada por el mismo. La Comisión Industrial confirmó dicha resolución.

Ante nos el peticionario alega que la Comisión Industrial cometió error (1) "al denegar permiso al peticionario para examinar, a través de su abogado, el expediente del caso", y (2) "al resolver que el accidente sufrido por el peticionario no es compensable de acuerdo con la ley y la jurisprudencia". ■

El primer error no fue cometido. El caso de *Sierra* v. *Tribunal*, 81 D.P.R. 554, invocado por el peticionario no es aplicable. Allí se interpretaron las Reglas de Procedimiento Civil sobre descubrimiento de prueba. Dichas Reglas rigen todos los procedimientos de naturaleza civil ante el Tribunal General de Justicia. (Regla 1). La Comisión Industrial es un órgano cuasi judicial, *Caraballo* v. *Comisión*, 51 D.P.R. 161 y no forma parte del Tribunal General de Justicia.

La "Ley de Compensaciones por Accidentes del Trabajo" dispone en su Artículo 37 (11 L.P.R.A. sec. 38), en lo aquí pertinente, lo siguiente:

"Los informes adquiridos en virtud de las disposiciones de este capítulo por la Comisión Industrial, por el Administrador

---

(¹) El accidente ocurrió, según el resumen que hace la Comisión Industrial del testimonio del peticionario, en la siguiente forma: "Que ese día, mientras inspeccionaba el negocio del Sr. José M. Mendizabal, luego de haberse identificado con el dueño del mismo, se cayó, fracturándose el hueso parietal."

del Fondo del Estado o por un funcionario o empleado al cual se hubiere recomendado el cumplimiento de algún deber de acuerdo con este capítulo serán considerados de carácter privado, cuando así lo resuelva la Comisión Industrial o el Administrador del Fondo del Estado, y cualquier funcionario o empleado que revelare dicho informe, excepto por mandato de autoridad competente, será culpable de delito menos grave y, convicto que fuere, estará sujeto a una pena de multa no mayor de quinientos (500) dólares o cárcel no mayor de seis (6) meses.

"Nada de lo contenido en esta sección se entenderá que prohibe la inspección por la parte interesada o por su abogado de los informes y demás documentos relacionados con su caso." ■

No nos detendremos a considerar si la Comisión violó o no las disposiciones del anterior artículo ya que estamos convencidos de que su actuación no causó perjuicio alguno al peticionario. Antes de la vista éste había radicado una moción solicitando de la Comisión que ordenara al Administrador del Fondo le permitiera inspeccionar el expediente completo de su caso. Se basaba en que desconocía los datos en que se fundó el Administrador para denegarle compensación y que estos datos los obtuvo el Administrador mediante la investigación que practicó mientras que el peticionario no pudo descubrirlos antes, siéndole el conocimiento de dichos datos o hechos imprescindibles para presentar su caso ante la Comisión. Este organismo señaló la vista de dicha moción para la misma fecha en que se vería el caso en sus méritos. En dicha fecha fue declarada sin lugar por ser académica. La única prueba presentada durante la vista del caso consistió en el testimonio del peticionario y en el de los doctores García Estrada y Taveras. Se estipuló que la demás prueba sería acumulativa.

Surge del récord que el día de la vista, el abogado del Fondo le mostró al abogado del lesionado la declaración que éste había prestado ante un funcionario del Fondo y que días antes se le mostró la parte del expediente relacionada

con los informes médicos. La Comisión aceptó la versión del peticionario, única ofrecídale, sobre la forma como ocurrió el accidente y en cuanto a los testimonios de los médicos, el lesionado los conocía, por habérselos mostrado, días antes de la vista. Bajo estas circunstancias no se nos ha convencido de que el primer error fuera cometido, o que de haberse cometido, lesionara los derechos del peticionario.

En el segundo señalamiento de error el peticionario insiste en que sufrió un accidente compensable. ■

En Puerto Rico al igual que en la mayoría de las jurisdicciones estaduales y distinto a varios estados como Pennsylvania y Utah, donde solo se exige que el accidente ocurra en el curso del empleo—*Miller* v. *Fred Schiffner & Sons*, 173 A.2d 707 (Pa.); *Tavey* v. *Ind. Comm.*, 150 P.2d 379 (Utah)—se requiere que el accidente provenga "de cualquier acto o función inherente a su trabajo o empleo y que ocurra en el curso de éste y como consecuencia del mismo". 11 L.P.R.A. sec. 2; *Cordero, Admor.* v. *Comisión Industrial*, 61 D.P.R. 361; *Cardona* v. *Comisión Industrial*, 53 D.P.R. 272; *Montaner, Admor.* v. *Comisión Industrial*, 53 D.P.R. 197. El peticionario arguye, sin embargo, que su caso está cubierto por nuestra decisión en *Montaner* v. *Comisión Industrial*, 55 D.P.R. 900. En ese caso el obrero trabajaba abriendo brechas en zanjas de riego. Su cadáver fue encontrado dentro de una de esas zanjas, atribuyéndose su muerte a asfixia por sumersión al caer dentro de la zanja, en el curso de un ataque epiléptico. Resolvimos que el accidente era compensable. Dijimos a la página 903: "Cuando la Industria expone al obrero a un riesgo al cual no hubiera estado expuesto bajo las circunstancias de su vida ordinaria, ella debe responder en el caso de muerte o lesiones sufridas en el curso del empleo y como consecuencia de un riesgo inherente al mismo." ■

El peticionario sufrió el ataque epiléptico y la consiguiente caída al suelo, en el curso de su empleo. Sin em-

bargo, para que el accidente sea compensable, según nuestra reiterada jurisprudencia, es necesario además, que el accidente provenga de cualquier acto o función inherente a su trabajo o empleo y que ocurra como consecuencia del mismo. ▋

En Puerto Rico, como en la mayoría de los Estados(²) hemos adoptado la teoría del riesgo adicional o de peligro especial en relación con la compensabilidad de accidentes sufridos a causa de una condición idiopática del obrero o empleado. De conformidad con esta teoría una caída al suelo debido a un ataque cardíaco, o epiléptico, vértigo, o cualquier otra condición idiopática, no es compensable a menos que la caída sea, por ejemplo de una escalera, o dentro de una maquinaria, un agujero, o contra cualquier otra cosa que no sea el suelo, ya que en tal caso se aumenta el riesgo de sufrir daño o se trata de un peligro especial del trabajo o empleo. Horovitz, *"On Workmen's Compensation*, pág. 145; 1 Larson, *Workmen's Compensation Law*, pág. 158; 99 *C.J.S.*, pág. 887. ▋

En el propio caso de *Montaner*, supra, citamos con aprobación el de *Andrews* v. *L. & S. Amusement Corp.*, 170 N.E. 506 (N.Y.), donde se resolvió que una caída al suelo debido a desórdenes internos del lesionado no era compensable. A la pág. 905 citamos de dicho caso lo siguiente: "El riesgo de caer sobre el pavimento durante el ataque no se debe al empleo. Si Andrews se hubiese caído desde una escalera, desde un andamio, o dentro de un agujero, las oportunidades de sufrir una lesión, hubieran sido aumentadas. Si hubiese

---

(²)*Henderson* v. *Celanese Corp.*, 104 A.2d 720, 108 A.2d 267 (N.J.); *Cinminos Case*, 146 N.E. 245 (Mass.); *Stasel* v. *American Radiator & Standard San. Corp.*, 278 S.W.2d 721 (Ky.); *Riley* v. *Oxford Paper Co.*, 103 A.2d 111 (Maine); *Dasaro* v. *Ford Motor Co.*, 113 N.Y.S.2d 413; *Mayer* v. *Eberhard Faber Pencil Co.*, 85 N.Y.S.2d 659; *Valerio* v. *Ind. Comm.*, 334 P.2d 768 (Ariz.); *Dustin* v. *Lewis*, 112 A.2d 54 (N.H.); *Bagwell* v. *Ernest Burwell, Inc.*, 88 S.E.2d 611 (S.C.); *U.S. Casualty* v. *Richardson*, 43 S.E.2d 793 (Georgia); *Rockford Hotel Co.* v. *Ind. Comm.*, 132 N.E. 759 (Ill.); *Baltimore Dry Docks* v. *Webster*, 116 Atl. 842 (Md.); *Watson* v. *Grimm*, 90 A.2d 180 (Md.).

ocurrido un accidénte que causara su caída, tendríamos otro elemento en el caso. No hubo accidente, la caída se debió a desórdenes internos, y las lesiones no resultaron de ningún riesgo adicional impuesto por el empleo. Esta distinción existe en numerosos casos." ▉

En verdad no encontramos que en el presente caso exista relación causal entre el accidente y el empleo del peticionario. Al así resolverlo y declarar dicho accidente no compensable, actuó correctamente la Comisión. *Su resolución será confirmada.*