EUGENE A. STULB, PETITIONER-APPELLANT, v. FOOD-CRAFT, INC., RESPONDENT-RESPONDENT.

Union County Court
Law Division

Decided September 28, 1962.

*Mr. John E. Neville* for petitioner-appellant.

*Mr. William T. McElroy* for respondent-respondent (*Messrs. Pindar, McElroy, Connell & Foley,* attorneys; *Mrs. Sonia Napolitano* on the brief).

BARGER, J. C. C. This is a workmen's compensation appeal. There was a dismissal below and the employee appeals.

The issue to be determined by the court is whether the accident occurring arose out of the employment, it being uncontradicted that an accident did occur and that it occurred during the course of the employment.

The petitioner-appellant, hereinafter referred to as the petitioner, was regularly employed by the Food Craft, Inc., hereinafter referred to as the respondent, as a route salesman; his weekly earnings averaged $104. At the time of the accident he was married and 59 years of age and in good health. He had never suffered any serious illness or accident.

On November 4, 1959 he covered his usual route and serv-

iced the customers thereon without incident. About 5:30 P. M. he returned to the place of business of the respondent in Hillside, N. J., entered the main building, which in the evidence is referred to as a warehouse, in order to fill out what is referred to as tickets covering each transaction involved in that day's business. The evidence indicates that there were others present in the building in the area of the incident described and that a general meeting was being held at which salesmen and the manager were present. Whether he was attending this meeting or not is not clear. He has no recollection as to this, but was present in the vicinity of the other employees attending such meeting. The petitioner was standing at what is referred to as a metal desk or table about 4½ or 5 feet in height. All of a sudden the petitioner fell backwards to the concrete floor, striking his head. He describes it in this manner: "I just fell. I tried to move. I guess I slipped on the concrete." He fell from the standing position indicated and does not remember anything after hitting the concrete floor. He was taken from the premises to the Alexian Brothers Hospital in Elizabeth, N. J. For some period after the fall he was in an unconscious or in a semiconscious condition. Petitioner does not know why he fell. His testimony indicating the cause as slipping is a matter of speculation rather than any direct knowledge.

The history at the hospital has no probative value as it does not give any helpful particulars as to the cause; and, further, the source is not indicated by the evidence. The final diagnosis was cerebral concussion, fracture of skull, right occipital bone. He was taken to the hospital by ambulance on the first occasion on the date of the accident and confined therein until November 11, 1959; readmitted on November 13, 1959 and discharged on November 20, 1959. The attending physician on the first admission was Dr. J. Peyser, and on the second, Dr. F. Ambrose. These doctors did not testify.

Since the accident the petitioner complains of frequent headaches; some difficulty in sleeping; diminishment in

vision, necessitating the wearing of glasses all the time, whereas previously he required them only for reading; some numbness in the shoulder and arm; nervousness. The evidence indicates that the petitioner never suffered any serious illness or accident prior to this incident.

As indicated, it is evident from the testimony of the petitioner and a statement given by the petitioner thereafter, Exhibit R-1, that he actually does not know what caused him to fall. His statement, which is Exhibit R-1, is in conflict with his testimony and that of the witness Johnson. He does not recall the meeting or the others being present. His recollection is hazy as indicated by the testimony of the witnesses Ball and Johnson. Ball is the investigator of the insurance carrier who prepared the statement Exhibit R-1, and Johnson is a witness for the petitioner and a customer of the respondent who was at the meeting referred to. The witness Johnson, during the course of the meeting observed the petitioner fall backward and describes it in this manner: "It appeared to me as if the feet had gone out from under him and he had fallen backwards, like you would slip on ice or something like that." This witness observed nothing in the area which could cause any slipping. The evidence does not indicate anything relating to the petitioner's shoes. Evidence does indicate that the concrete floor of the building does slope slightly as do most floors for proper drainage. At the time of the fall the petitioner was holding in his hand a couple of salesbooks. The witness Johnson, at the time the petitioner struck the floor, characterizes the noise resulting therefrom as a "crack," indicating that the petitioner's head did strike the floor severely.

Medically, Dr. Nelson C. Policastro testified for the petitioner that he examined the petitioner April 29, 1960. As the result of this examination he reached the conclusion that the petitioner suffered a post-traumatic cerebral concussion, manifestly subjective from complaints of headaches, lightheadedness, paresthesia of numbness and pins and needles in the right hand, with anxiety, and a fracture of the skull.

He estimated partial permanent disability at 17½% of total from a neuropsychiatric standpoint.

The medical report of Dr. Albert Willner was received in evidence as Exhibit P-2. He examined the petitioner about May 11, 1960 and arrived at a diagnosis of residual sprain, servical spine, superimposed upon other pathology. He advised a neurological consultation and estimated partial permanent disability at 7½% of total.

The court here is confronted with a situation where there is no direct or circumstantial evidence from which a work-connected cause can be inferred. The testimony of witnesses on this point appears to be speculative, characterized by such testimony as "I guess I slipped," without any evidence of any condition present at the time to support a reasonable probability. Concrete floors are in common use in industry, in public areas and in the home. They are not inherently dangerous. There is just no direct or circumstantial evidence from which the court can form any cause hypothesis. The burden of proof in this regard is on the petitioner. *Black v. Mahoney Troast Const. Co.*, 65 *N. J. Super.* 397 (*App. Div.* 1961), certification denied, 34 *N. J.* 471 (1961). The petitioner has not carried his burden.

For purposes of compensation, an accident has been defined as follows:

"An 'accident' in the legislative sense is an 'unlooked for mishap or an untoward event, which is not expected or designed.' " *Ciuba v. Irvington Varnish & Insulator Co.*, 27 *N. J.* 127, 134 (1958).

The fall resulting in an injury diagnosed as a cerebral concussion, fracture of the skull, right occipital bone, is not disputed. The evidence indicates without question that the fall did occur during the course of the employment. There is nothing indicating or suggesting any causal relationship of the fall to any previous physical condition or disease. This burden is on the respondent. *Spindler v. Universal Chain Corp.*, 11 *N. J.* 34 (1952). If the fall would not

have occurred but for the employment, it is covered by the statute.

The respondent contends that this is an idiopathic fall. Idiopathic is defined as originating spontaneously; self-originated; neither sympathetic nor traumatic. *Maloy, Medical Dictionary for Lawyers,* (1942). Also as pertaining to conditions without clear pathogenesis, or disease without recognizable cause, as of spontaneous origin. *Taber's Cyclopedic Medical Dictionary* (1955). An idiopathic collapse or fall is not compensable simply because it occurred at the place of work during working hours, but it is compensable if it was causally related to the work. The proof may be circumstantial or direct and the test is probability rather than certainty. Here the floor of the place of employment is merely a part of the total circumstances surrounding the fall and no causal relationship is indicated between the fall and the floor. No other equipment or apparatus is involved. There is no evidence that the petitioner was doing anything workwise which in any way contributed to the fall. The cause is simply unknown. To decide otherwise is to delve into the realm of conjecture. To grant compensation in this case one must read out of the act the necessary element of the injuries arising out of the employment.

This court concludes that the petitioner has proven a fall without showing its causal relationship to the employment. The court concurs in the finding below and the petition is accordingly dismissed. *Black v. Mahoney Troast Const. Co., supra.; Dustin v. Lewis,* 99 *N. H.* 404, 112 *A. 2d* 54 *(Sup. Ct.* 1955); *Henderson v. Celanese Corp.,* 16 *N. J.* 208 (1954); *Gilligan v. International Paper Co.,* 24 *N. J.* 230 (1957).