PAULA CASTRO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., y G. ATILES MORÉU, ADMINISTRADOR DEL FONDO DEL ESTADO, recurridos.

Núm. 321.—*Sometido:* Enero 8, 1945. *Resuelto:* Febrero 5, 1945.

*Virgilio Brunet,* abogado de la recurrente; *Ángel de Jesús Matos, Joaquín Correa Suárez* y *A. Sandín del Manzano,* abogados del Administrador del Fondo del Estado, recurrido.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

En diciembre 2 de 1942 el obrero Gregorio Hernández, mientras trabajaba en el campo de su patrono asegurado, fué atacado por uno de los bueyes que conducía uncidos al arado con que realizaba su trabajo. El herido fué hospitalizado por orden del Fondo del Seguro del Estado hasta el 29 de diciembre de 1942, fecha en que se le dió de alta y se le envió a su casa, en donde falleció el 3 de enero de 1943, a consecuencia de un cáncer de la próstata.

En octubre 19 de 1943, el Administrador del Fondo del Seguro del Estado ordenó el archivo y sobreseimiento del caso, basándose en que de acuerdo con el testimonio de los médicos no existía la relación de causa y efecto que contempla la ley entre el accidente sufrido y la muerte del obrero.

No estando conformes con la decisión del Administrador, los beneficiarios del obrero apelaron para ante la Comisión Industrial, mediante escrito fechado en noviembre 29 de 1943 y radicado el día 30 del mismo mes y año.

En marzo 31 de 1944, al comenzar la vista del caso ante la Comisión, el abogado del Administrador solicitó la desestimación de la apelación, alegando que ésta había sido interpuesta después de haber expirado el término de treinta días que fija la ley. En abril 4 de 1944, la Comisión dictó su resolución desestimando la apelación, y el 11 del mismo mes denegó la reconsideración solicitada por la peticionaria.

La peticionaria, esposa del obrero fenecido, ha interpuesto el presente recurso de revisión, alegando que la Comisión Industrial erró al desestimar su apelación, la cual, según alega, fué interpuesta dentro del término legal.

Del récord ante nos aparecen los hechos siguientes:

Después de dictada la resolución de 19 de octubre de 1943, denegando la compensación, el Administrador envió al Jefe de la Policía Insular tres copias de su resolución, con súplica de que se notificase a la peticionaria Paula Castro

y a su hija Leonarda Hernández Castro. La primera copia tiene en su parte superior una nota que dice: "Devuélvase esta copia al Fondo del Seguro del Estado." Las otras dos copias eran para ser entregadas a las mencionadas beneficiarias.

En octubre 27 de 1943, el Jefe de Distrito de la Policía Insular en Moca, encargado de notificar a las beneficiarias, informó al Fondo del Estado que en esa misma fecha "notificó del contenido de tres (3) copias" que le fueron enviadas para su diligenciamiento, a la señora Castro y a su hija, "quienes se negaron a firmar la notificación mencionada." El informe del citado Jefe termina diciendo: "Por las razones expuestas, *le devuelvo sin cumplimentar dichas copias* al Sr. Administrador del Seguro del Estado a los fines que estime pertinentes." Las tres copias fueron devueltas al Administrador y forman parte del expediente que tenemos a la vista. No obstante lo que aparece en el mencionado informe, al dorso de la copia marcada para ser devuelta al Administrador aparecen dos "Certificados de Diligenciamiento," estampados con un sello de goma. Uno de ellos dice así: "Certificado de Diligenciamiento. Certifico que el día de hoy 27 de octubre de 1943, a las 9 A. M. notifiqué personalmente la presente decisión a doña Paula Castro en_____, dejando en su poder copia exacta de la misma. Firmado: A. Rosa Cordero, Jefe Dtto. 8ª. Clase." El otro certificado se refiere a Leonarda Hernández y está redactado en idénticos términos. Al margen de cada certificado aparecen las palabras "se negó firmar," escritas con lápiz.

En la vista celebrada ante la Comisión, el Jefe de Distrito, Amalio Rosa Cordero, declaró: Que después de haber recibido las copias de la decisión del Administrador, él mandó a buscar a la señora Castro y a su hija para que viniesen a su oficina. Cuando llegaron, les leyó la decisión y las requirió para que firmaran y ellas se negaron, diciendo que tenían instrucciones de su consejero de no firmar. Que

no obstante eso, él les advirtió que estaban notificadas y les ofreció una copia a cada una y ellas dijeron que no las querían y dejaron las copias sobre la mesa, informándole que no las aceptaban. Que entonces él devolvió las copias con el informe correspondiente. Que las mencionadas señoras no se quedaron con copia alguna de la decisión.

Paula Castro, llamada a declarar por la Comisión, lo hizo en la forma siguiente: Que el jefe de la policía la mandó citar para que fuera a recibir unos papeles; que el jefe le leyó los papeles y le dió unas copias, pero ella no las cogió porque no le convenía cogerlas; que "aunque nadie me hubiera aconsejado yo sabía que yo tenía derecho y acción;" que su hija estaba allí y le entregaron una copia, pero ella tampoco la cogió.

De acuerdo con el artículo 10 de la Ley núm. 45 de 1935 ((1) pág. 251), según fué enmendado por la Ley núm. 43 de 22 de abril de 1942 ((1) pág. 455), el plazo para poder apelar de una decisión del Administrador es de treinta días, contados desde la fecha en que se notifique a los beneficiarios o interesados la decisión.

La única cuestión a resolver es si las actuaciones del oficial de la policía, tendientes a notificar a las beneficiarias, pueden y deben ser consideradas como la notificación que requiere la ley, para que empiece a correr el término legal de treinta días para radicar el escrito de apelación.

La regla 5(b) de las Reglas de Enjuiciamiento Civil, en vigor desde el 1ro. de septiembre de 1943, dispone lo siguiente:

"(b) *Notificación: Cómo se hace.*—Siempre que bajo estas reglas se requiera o se permita hacer una notificación a una parte representada por abogado, la notificación se hará al abogado, a menos que la corte ordene que la notificación se haga a la parte misma. *La notificación al abogado o a la parte se hará entregándole copia o* remitiéndosela por correo a su última dirección conocida, . . . . . . Entregar una copia quiere decir, según esta regla: ponerla en manos del abogado de la parte, o dejarla en su oficina en poder de su escribiente u otra persona a cargo de la misma;".

En el caso de autos, el Administrador, pudiendo haber notificado a las beneficiarias mediante el envío por correo de una copia de su decisión, prefirió hacerles una notificación personal y comisionó al jefe de la policía para que la hiciera. Tratando, sin duda alguna de la mejor buena fe, de cumplir la misión que se le había encomendado, el citado jefe hizo muchas cosas que no estaba obligado ni tenía derecho a hacer y dejó de hacer lo esencial para que una notificación pueda surtir efecto legal. No estaba obligado a leer a las beneficiarias el texto de la decisión del administrador, y el habérselo leído no constituye una notificación. Sin tener derecho a ello, exigió a las peticionarias que firmasen o estampasen sus huellas digitales en la copia de la decisión que les acababa de leer, y ellas, en uso de su derecho, se negaron a hacerlo. Ofreció o trató de entregar a las beneficiarias las copias de la decisión, que le habían sido enviadas para que se las entregase, y al manifestarles ellas que no estaban dispuestas a aceptar dichas copias, el jefe, en vez de ponerlas en sus manos o dejarlas a su alcance y a su disposición, se quedó con ellas para devolverlas al Administrador, "sin cumplimentar." Si se hubiese limitado a entregar o a dejar en manos o al alcance de las beneficiarias las copias de la decisión del Administrador, la notificación hubiera sido hecha de acuerdo con la regla citada.

Es evidente la contradicción que existe entre el informe del jefe de la policía al Administrador y los certificados de diligenciamiento. En el informe se hace constar que las beneficiarias se negaron a firmar y que por esa razón "le devuelvo sin cumplimentar dichas copias." En los certificados se hace constar que se notificó la decisión personalmente a cada una de las beneficiarias, "dejando en su poder copia exacta de la misma." El conflicto fué dirimido por el propio Jefe, al declarar que él devolvió las dos copias al Administrador y que no dejó copia alguna en poder de las personas a quienes trató de notificar.

La Comisión Industrial erró al sostener que Paula Castro, la recurrente, fué debidamente notificada y que su apelación fué interpuesta tardíamente.

*La resolución recurrida debe ser revocada y el caso devuelto a la Comisión Industrial para ulteriores procedimientos no inconsistentes con esta opinión.*